UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL PITTO, | Case No.: 09-CV-03023-LHK |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES A. YATES, Warden of the Pleasant Valley State Prison, | |
| Respondent. | |

**INTRODUCTION**

Petitioner, a California prisoner currently incarcerated at the Pleasant Valley State Prison in Chowchilla, California, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent has filed an answer addressing the merits of the petition, ECF No. 12, and Petitioner has filed a traverse. ECF No. 25. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner has not stated a claim entitling him to habeas relief. Accordingly, the Court denies the petition.

**PROCEDURAL HISTORY**

In December 2003, Petitioner was convicted of felony transportation of methamphetamine, misdemeanor possession of methamphetamine, being a felon in possession of a firearm, misdemeanor carrying a concealed weapon in a vehicle, and misdemeanor being under the influence of methamphetamine. The trial court imposed an initial sentence of seventeen years and

1

four months in state prison.[1]  *See* Petitioner's Memorandum in Support of Verified Petition for a Writ of Habeas Corpus ("Pet. Mem.") at 3.  The seventeen-year sentence included a four-year term for transportation of methamphetamine, a four-year consecutive term for an arming enhancement imposed under California Penal Code § 12022(c) for the transportation charge, an eight-month consecutive term for the felon in possession of a firearm charge, and an eight-month consecutive term for an on-bail enhancement.  *Id.*  In February 2004, the trial court recalled the sentence and increased the on-bail enhancement from 8 months to 2 years, for a total combined sentence of 18 years and 8 months.  *Id.*

Petitioner filed a direct appeal in the California Court of Appeal, which reversed Petitioner's conviction only for the arming enhancement under Penal Code § 12022(c).  *See* Exh. A to Petition for Writ of Habeas Corpus.[2]  The opinion was certified for partial publication, publishing only the portion explaining its decision on the "facilitative nexus" instructional error.  *Id.*  The California Supreme Court ordered review on its own motion.  On April 7, 2008, the California Supreme Court reversed the Court of Appeal and reinstated Petitioner's conviction and prison sentence for the § 12022(c) arming enhancement.  *See People v. Pitto*, 43 Cal. 4th 228 (2008).

## FACTUAL BACKGROUND

Federal courts reviewing habeas petitions are instructed to presume that the factual determinations of state courts are correct unless that presumption is rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (2006).  Accordingly, the factual background provided by the California Supreme Court will serve as the factual framework for this habeas review.  It is provided below:

> Around midnight on May 23, 2003, officers from the Lake County Narcotics Task Force saw defendant drive his Dodge minivan into the Twin Pines Casino parking lot.  The officers knew that methamphetamine sales commonly occurred

---

[1] The sentence was a combined sentence for the convictions at the December 2003 trial and for convictions imposed in three other proceedings: (1) a separate trial resulting in Petitioner's conviction for possession and transportation of controlled substances; and (2) two other cases involving Petitioner's no-contest pleas to possession of stolen property and evasion of a police officer charges.  Pet. Mem. at 3.

[2] All Exhibits are to the Petition for Writ of Habeas Corpus, unless otherwise specified.

2

Case No.: 09-CV-3023-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

there. They also knew that defendant had sustained prior drug convictions and was subject to a probation search condition. When defendant exited the van and began walking his dog, the officers detained him. He showed signs of being under the influence of a stimulant. His van was searched.

In an open floorboard area in the middle of the van, between the back of the driver's seat and the front of a rear bench seat, officers found a black garbage bag. The bag contained clothing and a cigarette package. Protruding from the cigarette package was a baggie holding a crystalline substance. The substance was later determined to be 12.09 grams of methamphetamine, or a little less than one-half of an ounce. Through expert testimony, the prosecution established that this quantity represented 120 individual doses of the drug with a retail value of at least $2,000.

Behind the driver's seat, one foot from the bag containing the drugs, officers found a cardboard box. The box contained a .357–caliber Ruger revolver in a zippered pouch. The gun was unloaded, but six rounds of ammunition were tucked into a pocket of the pouch.

The officer who discovered the black garbage bag and the cardboard box testified that the gun was closer to the driver's seat than the drugs, and that the gun was "within arm's reach" of defendant. In opining that defendant likely possessed the drugs for sale, the officer cited factors such as the amount of drugs in the van and the presence of the gun nearby. According to the witness, "persons who possess firearms while in the possession of controlled substances typically possess that firearm to protect the product itself and/or to protect proceeds, which would be the result of selling the product." He opined that it would take 10 to 15 seconds to unzip the pouch, extract the gun and the bullets, and load the chamber. Another expert confirmed the likely drug-related purpose of the gun in the van.

Other prosecution evidence, such as defendant's statements to his probation officer, showed that he kept title to his speedboat and his Harley Davidson motorcycle in friends' names so they could not be seized by the state. An expert testified that savvy drug dealers followed this practice to reduce the risk of asset forfeiture in the event they were accused of methamphetamine trafficking.

Defendant testified on his own behalf that he was arrested near the start of the Memorial Day weekend while driving to Clear Lake, where one of his parents' homes was located. A painter and handyman, he had finished work a few hours earlier at his sister and brother-in-law's home in the San Francisco Bay Area. Defendant admitted that he bought almost one-half ounce of methamphetamine before leaving the Bay Area. He put most of it in his minivan, but left one gram at his sister's house "to make sure [he would] have some when [he] got back." He used a gram of the drug daily, and had been dependent on it for several years.

Defendant testified that he bought the Ruger pistol from a friend four months earlier, while on probation for prior convictions. The night of his arrest, he took the gun from a work vehicle parked near his sister's house, and placed it in the back of the minivan near the drugs before driving to the lake. He denied using the gun in any drug offense. He also denied planning to sell drugs in Lake County (though he acknowledged having done so in the past). Defendant intended to consume the drugs while "party[ing]" with friends at the lake.

Defendant, along with his mother and brother, testified that he disliked guns, had been depressed in the year before the crimes, and had expressed suicidal thoughts. Defendant claimed he bought the gun to kill himself. He admitted, however, that he had no plan to commit suicide over the holiday weekend or at any

3

other specific time.  A defense investigator opined that the drugs and gun were not possessed for commercial purposes because no measuring or packaging items were found in the van, and because the gun was unloaded.

Outside the presence of the jury, the trial court indicated that it planned to give CALJIC No. 17.15, the standard instruction concerning the section 12022 arming enhancement.[3]  Defense counsel did not object.  His sole request was that the court state that the firearm must be "readily" available for offensive or defensive use in the charged crime—a change the court declined to make.

During deliberations, the jury sent the court a note seeking the definition of "armed" in section 12022.  When the court reread key language from CALJIC No. 17.15, one juror asked about the meaning of "availability" in the instruction.  The court replied that such factual questions were solely for the jury to decide.

Defendant was convicted of transporting methamphetamine (Health & Saf. Code, § 11379(a)), a felony.  The jury found true a related allegation that Petitioner was personally armed with a firearm under section 12022(c).  As to the charge of possession of methamphetamine for sale (Health & Saf. Code, § 11378), the jury convicted defendant of the lesser included felony offense of possession of methamphetamine. (*Id.* § 11377(a).)  An arming allegation was sustained as to that count as well.  (§ 12022(a)(1).)  The jury found against defendant on all other charges and allegations set forth in the information.

At sentencing, the court consolidated this case with three other proceedings in which defendant had been convicted of possessing and transporting controlled substances, receiving stolen property, and evading a peace officer.  He received a total combined sentence of about 18 years in prison. It included a four-year arming enhancement under section 12022(c) for transporting methamphetamine in this case.  No additional term was imposed under section 12022(a)(1) for the finding that defendant was armed in possession of methamphetamine.

*Pitto*, 43 Cal. 4th at 232-35.

Petitioner appealed, and the Court of Appeal agreed with Petitioner that CALJIC No. 17.15 failed to explain the necessary "nexus or link" between firearm and drug crime under section 12022, as explained in *People v. Bland*, 10 Cal. 4th 991 (1995).  In *Bland*, the California Supreme Court held that the arming enhancement under section 12022 requires a "facilitative nexus" between the gun and the drugs.  *Id.* at 1002.  By omitting the *Bland* "faciliatative nexus" requirement from the instructions, the Court of Appeal said, the trial court had precluded consideration of the defense theory that the gun was placed in the van to commit suicide, i.e., that its presence near the drugs was coincidental and unrelated to the drug crimes, and that Petitioner

---

[3] The relevant portion of those jury instructions, for the purposes of this review, include "If you find Defendant guilty of the crimes thus charged, you must determine whether a principal in that crime was armed with a firearm at the time of the commission or attempted commission of the crimes." (footnote added).

4

Case No.: 09-CV-3023-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

therefore was not "armed in the commission of" any crime. The Court of Appeal further determined that the instructional error amounted to a federal constitutional violation, and was not harmless beyond a reasonable doubt. The judgment was reversed insofar as Petitioner was found to have been armed under section 12022(c) while transporting methamphetamine.

The California Supreme Court reversed the Court of Appeal's decision, noting that *Bland*'s "facilitative nexus" test did not impose an "intent requirement" or provide that the purpose with which the gun was placed near the drugs could negate the "facilitative nexus" that arming requires. *Pitto*, 43 Cal. 4th at 239-40. Accordingly, Court held that the facts presented by the prosecutor satisfied the "facilitative nexus" required by § 12022. Petitioner knew of the handgun's location and proximity to the methamphetamine because he himself had placed the weapon there. Further, the Court emphasized that a jury could have reasonably found, even without the specific instruction, that the proximity was not "accidental or coincidental" because Petitioner had consciously put the drugs and the gun in those positions. The gun was therefore readily at hand for the potential perpetration of drug crimes.

## LEGAL CLAIMS

In the actual Petition, Petitioner asserts the following claims for habeas relief: (1) violation of Petitioner's right under the Fifth and Sixth Amendments to have the jury determine every element of the enhancement beyond a reasonable doubt, due to the trial judge's failure to *sua sponte* instruct the jury on Petitioner's "facilitative nexus" defense; (2) violation of Petitioner's rights under the Fifth and Sixth Amendments to present a meaningful defense to the arming enhancement; (3) violation of Petitioner's due process rights under the Fourteenth Amendment to accurate and adequate jury instructions, due to the trial judge's failure to include the element of "facilitative nexus" within the jury instruction and later refusal to clarify the definition of "available;" (4) violation of Petitioner's Fourteenth Amendment due process right to fair warning of what constitutes criminal conduct, on the grounds that the California Supreme Court's clarification of *Bland* in Petitioner's appeal retroactively applied an enlarged construction of the arming statute.

## DISCUSSION

5

Case No.: 09-CV-3023-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**I.   Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2006). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d) (2006).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor,* 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, *Miller–El v. Cockrell,* 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El,* 537 U.S. at 340.  The Court must presume correct any determination of a factual issue made by a state court unless Petitioner rebuts the

6

presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (2006).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of Petitioner's claims in a reasoned decision. Here, we look to the decision of the California Supreme Court in *People v. Pitto*, 43 Cal. 4th 228 (2008).

## II. Petitioner's Claims

In his Memorandum of Points and Authorities, Petitioner reorganizes the four claims set forth in his actual Petition, and places them into two distinct categories . He first argues that the California Supreme Court unreasonably rejected his claims that the trial court's instructions to the jury violated the federal Constitution in several ways. He contends that the instructions' failure to adequately inform the jurors of the "facilitative nexus" requirement (1) omitted or misdescribed an element of the arming enhancement; (2) denied Petitioner's right to present a defense to the enhancement allegation; and (3) denied Petitioner's due process right to accurate clarifying instructions. Second, Petitioner argues that the California Supreme Court retroactively applied an enlarged construction of the arming statute in violation of his federal Constitutional right under the Due Process Clause of the Fourteenth Amendment.

### A. Failure to Inform Jurors of the "Facilitative Nexus" Requirement

1. <u>Omission of an Element From Jury Instructions</u>

Penal Code §§ 12022(a) and (c) mandate a consecutive term of imprisonment upon a finding that a defendant was armed "in the commission of an underlying felony offense." Pursuant to this provision, the jury found that Petitioner was armed "in the commission" of the transportation and possession offenses.

The relevant portions of CALJIC 17.15, as read by the trial court, instructed the jurors that if they found defendant guilty of the underlying offenses, they "must determine whether a principal in that crime was armed with a firearm at the time of the commission or attempted commission" of those offenses. Exh. A at 4. Petitioner argues that these instructions failed to adequately explain the nexus requirement, or more specifically, failed to explain that the arming was only actionable if it was related to the underlying offense. Pet. Mem. at 23. Essentially, Petitioner asks this Court to

7

find that the California Supreme Court's interpretation of California law, namely the elements of the arming enhancement statute and the adequacy of the standard jury instructions to establish them, was unreasonable.

Claims that a state court erred in interpreting state law are not cognizable on federal habeas review. *Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006); *Robertson v. Runnals*, No. C 05-3103 PJH, 2008 WL 60288, at *17 (N.D. Cal. Jan. 3, 2008). Federal courts are generally bound by a state court's construction of state laws, *Melugin v. Hames*, 38 F.3d 1478, 1487 (9th Cir. 1994), unless such interpretation is "an obvious subterfuge to evade the consideration of a federal issue" or if it "constituted a fundamental defect which inherently result[ed] in a complete miscarriage of justice." *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994); *Little*, 449 F.3d at 1083.

Although state courts generally possess authority to "define the elements of a particular offense, once it has defined them, due process requires that the jury be instructed on each element and find each element beyond a reasonable doubt before it can convict." *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998). A trial court's failure to instruct the jury on an element of a sentence enhancement provision is a federal constitutional error unless it can be shown, beyond a reasonable doubt, that the error did not contribute to the jury's verdict. *People v. Sengpadychith*, 26 Cal. 4th 316, 324-25 (2001). The relevant question, then, is whether the instructions as given failed to instruct the jury on an *element* of the enhancement.

Here, the California Supreme Court considered the requirements of the California arming enhancement statute and determined that the jury instructions the trial court gave on section 12022 were proper in addressing each element. *Pitto*, 43 Cal. 4th 228, 239-240 (2008). The nexus requirement, the Court explained, was contained within the word "armed," and the jury was instructed that it had to find that the defendant was armed to impose the enhancement. *Id.* at 240. The court rejected, as a matter of California law, Petitioner's argument that the court should have given "an instruction allowing the jury to find from defense evidence and argument that there was no 'facilitative nexus' between the gun and the drugs because he possessed the gun for another reason." *Id.* Rather, the Court ruled that the enhancement required only that "the proximity of the gun to the drugs is not the result of mere accident or happenstance." *Id.* at 240. The Court

8

explained that [r]egardless of his original motive, the opportunity and incentive to later resort to using the gun in perpetrating the crime is the same." *Id.* In other words, the fact that Petitioner wished to disprove—that his reason for placing the gun in the van was to use it for the drug crime—was not, as a matter of California law, an element of the enhancement. *Id.* There thus was no due process violation in failing to give the jury a specific instruction on that issue. *Id.* at 239-40.

Petitioner's argument that his due process rights were violated by the jury instructions would require this Court to find that the California Supreme Court was mistaken in ruling that the reason a defendant placed a gun is not an element of the arming enhancement. It is well established that federal courts are bound by a state court's construction of a state statute, except if the construction requires unreasonable application of federal law or constitutes a fundamental "miscarriage of justice." *Little*, 449 F.3d at 1082. The California Supreme Court's conclusion that the defendant's reason for placing a gun is not an element of the arming enhancement is not unreasonable, nor does it constitute a "fundamental defect" that results in a "complete miscarriage of justice." Accordingly, this Court accepts the finding that a defendant's reason for placing the gun is not an element of the arming enhancement. Petitioner's federal constitutional claim is premised on the idea that it *is* an element, and thus cannot succeed. The Petition is thus denied as to the claim that the trial court failed to instruct on an element of the arming enhancement.

2. <u>Sixth Amendment Right to Present a Defense</u>

Petitioner further argues that the instructions violated his Sixth Amendment right "to present [his] version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." Pet. Mem. at 25-26 (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). Petitioner does not argue that he was prevented from presenting evidence of his reason for placing the gun in the van, but rather that the trial court's failure to instruct the jury on the relevance of reasons for placing the gun constituted deprivation of his right to present his defense. Pet. Mem. at 26.

While there are circumstances in which a failure to instruct the jury on the elements of an affirmative defense could violate the Sixth Amendment, *see Bradley v. Duncan*, 315 F.3d 1091, 1098 (9th Cir. 2002) (reversing conviction where court refused to give entrapment instruction), this

9

1   is not such a case. As established above, the so-called "defense" Petitioner wanted the jury to

2   consider is not, under California law, actually a defense to the arming enhancement. As such, it

3   was not unreasonable for the California Supreme Court to conclude that failure to instruct the jury

4   about it did not violate the Sixth Amendment. Accordingly, the Petition is denied as to the claim

5   that Petitioner was deprived of his right to present a defense.

6       3. <u>Due Process Right to Adequate and Clarifying Jury Instructions</u>

7       Petitioner also claims that the trial court responded inadequately to the jury's request for

8   guidance. Specifically, the jury sent the trial court a note seeking a definition of "armed" in section

9   12022. The trial court reread language from CALJIC 17.15, at which point one juror asked about

10  the meaning of "availability" in the instruction. The trial court replied that "such factual questions

11  were solely for the jury to decide." Exh. A at 10. Petitioner claims that his argument concerning

12  reasons for placing the gun go to the heart of the meaning of "availability." Thus, Petitioner

13  contends that the jury's question about the definition of "availability" placed the key to his defense

14  at issue, and the trial court should have provided clarifying instructions.

15      The Due Process Clause guarantees a criminal defendant a right to adequate jury

16  instructions. When jurors express confusion about the instructions, the trial judge should "clear

17  away" concerns with "concrete accuracy" by providing "a lucid statement of the relevant legal

18  criteria." *Bollenbach v. United States*, 326 U.S. 607, 612 (1946). When the jury instructions are

19  accurate and could adequately answer the jury's question, a judge may fulfill his or her

20  constitutional obligation by directing the jury "to the precise paragraph of the constitutionally

21  adequate instruction that answers its inquiry." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

22  However, under federal law, even insufficient responses to jury inquiries or allegedly incorrect jury

23  instructions do not amount to constitutional error unless the erroneous instructions "so infect[ ] the

24  entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72

25  (1991). The trial judge enjoys wide discretion in charging the jury, and such discretion "carries

26  over to a trial judge's response to a question from the jury." *Arizona v. Johnson*, 351 F.3d 988, 994

27  (9th Cir. 2003). The jury instruction at issue "may not be judged in artificial isolation, but must be

28  considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at

72.

The California Supreme Court did not explicitly address this issue of the jury questions, but implicitly rejected the claim. *Pitto*, 43 Cal. 4th 228. It was reasonable to do so. As established above, the original instructions were constitutionally adequate. Upon receiving the note asking about the word "armed," the judge re-read key language from "the constitutionally adequate jury instruction that answer[ed]" the inquiry. *Weeks*, 528 U.S. at 234. Though the trial court could perhaps have provided more guidance as to the *Bland* gloss on the meaning of "armed," it was not unreasonable for the California Supreme Court to find that the existing instructions were sufficient. Specifically, it would be reasonable to decide that the word "armed" implies some nexus requirement, and thus that no additional instruction was required to correctly state the elements.

But Petitioner has not argued that any lack of clarity in the definition of "armed" violated his rights. Rather, he argues that the problem was with the word "availability." *See* Pet. Mem. at 28. The California Supreme Court noted that Petitioner did "not seriously dispute that he knowingly placed the gun in the van and that it was available for his use in committing the drug crimes of which he was convicted. *Id.* at 238-38. Given that Petitioner's primary argument against the imposition of the arming enhancement is not that he could not have used the gun, but rather that he put it there for an unrelated reason, the Court's interpretation of his argument as not implicating availability was a reasonable one.

As there was no serious question as to availability, the trial court's failure to clarify the meaning of that term cannot have prejudiced Petitioner at all, let alone "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 67. The jury still had before it a set of constitutionally adequate instructions, and the state court reasonably rejected the claim that due process required more in this case. Thus, the petition is denied as to the claim that the trial court's response to the jury note deprived Petitioner of his due process rights.

**B. Retroactive Application of an Enlarged Construction of Section 12022**

Petitioner next argues that the California Supreme Court's departure from the "facilitative nexus" requirement as set forth in *Bland* violated his right to fair warning under the Due Process Clause.

11
Case No.: 09-CV-3023-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

An unforeseeable judicial enlargement of a criminal statute, applied retroactively, violates the federal due process right to fair warning of what constitutes criminal conduct. *See Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). Under *Bouie* and subsequent cases, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decisions has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). A judicial construction of a statute must not be applied retroactively "if [such construction] is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) (quoting *Bouie*, 378 U.S. at 354); *see also Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir. 1987) (stating that a judicial construction of a statute did not violate due process when the defendant could not show that "he was unfairly surprised in a way that affected his legal defense"). But a construction that merely adds a "clarifying gloss" to the prior construction does not violate due process. *Hamling v. United States*, 418 U.S. 87, 116 (1974). The crucial test is whether the judicial construction of the criminal statute represents a "radical and unforeseen departure from former law." *United States v. Walsh*, 770 F.2d 1490, 1492 (9th Cir. 1985).

The California Supreme Court did not explicitly discuss this argument either, though in reinstating the conviction for the arming enhancement, the Court implicitly rejected it. Considering the California Supreme Court's construction of the statute in *Bland*, this Court cannot say that the decision in this case was a "radical and unforeseen departure from former law." In fact, the California Supreme Court specifically explained how its decision was *consistent* with the principles espoused in *Bland*. *Pitto*, 43 Cal. 4th at 239. It explained that although *Bland* did adopt a facilitative nexus requirement, it did not impose an "intent" requirement under section 12022 or "provide that the purpose with which the gun was placed near the drugs negates the 'facilitative nexus' that arming requires." *Id*. at 239-40. This is not a "novel construction," but rather a "clarifying gloss." Even if this Court did not agree, it could not find that the California Supreme Court was unreasonable in so finding. Thus, the Petition is denied as to the claim that the state court retroactively applied an enlarged construction of the arming enhancement.

## CONCLUSION

12

Case No.: 09-CV-3023-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1   For the reasons set forth above, the petition for writ of habeas corpus is DENIED. The
2   federal rules governing habeas cases brought by state prisoners require a district court that denies a
3   habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 1
4   1(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has not shown "that jurists
5   of reason would find it debatable whether the petition states a valid claim of the denial of a
6   constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L.Ed.2d 542
7   (2000). Accordingly, no COA shall issue. The Clerk of the Court shall enter judgment in favor of
8   Respondent and close the file.

**IT IS SO ORDERED.**

Dated: September 21, 2012

_____
LUCY H. KOH
United States District Judge